# Vincent J. Romano, Esq.
9201 4th Avenue, Suite 704
Brooklyn, New York 11209
(718) 852-5200

June 4, 2008

Honorable Richard J. Sullivan
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

                        Re: United States v. Nickhoulas Vitale
                           <u>Criminal Docket No. 07-CR-280(RJS)</u>

Dear Judge Sullivan:

      Mr. Vitale appeared before your Honor for sentencing on May 8, 2008 at 2:15pm, and prior to the sentencing your Honor ordered a hearing pursuant to the April 1, 2008 court order.

      The government called two (2) witnesses at the hearing; Daniel Bonamassa and Ralph Longo who both testified to events related to the sentencing of Mr. Vitale regarding issues of restitution, offense level, role in the offense, and the factors set forth in 18 U.S.C. §3553 (a).

      Initially, it is important to note that co-defendant Iris Herskowitz- Baez was sentenced on March 26, 2008 pursuant to the terms set forth in her plea agreement, and the Court did not order a hearing concerning Ms. Baez's sentencing, but instead sentenced Ms. Baez to six (6) months in jail which was a sentence within the parameters of her plea agreement.

      Mr. Vitale respectfully submits that your Honor is potentially creating a disparity in the sentencing between the co-defendants who signed practically identical plea agreements. The Court could have ordered a hearing in connection with the Baez sentencing, however, the Court declined to do so.

      The defense is requesting that the Court not rely on the testimony of the two (2) witnesses, and sentence Mr. Vitale pursuant to the plea agreement and the factors set forth in 18 U.S.C. §3553 (a) and the recommendation of the U.S. Probation Department.

In the event that the Court credits in whole or in part the testimony of the two (2) witnesses then Mr. Vitale sets forth the following arguments to assist in the defendant's sentencing.

One of the factors that the Court attempted to clarify from the hearing was the total amount of the bribe(s) that were given by Daniel Bonamassa to the persons at Co-op City. Bonamassa testified that he allegedly gave a total of between $80,000 to $100,000 in bribes to persons at Co-op City via Nickhoulas Vitale who incidentally did not deliver every single payment to the Co-op City co-conspirators.

Although this case involved tens of thousands of subpoenaed records by various federal and state agencies which include: the U.S. Attorney's office, the F.B.I., Ronald Gardella, investigator, HUD, and the State Investigator's office, not a single investigator subpoenaed the banking records of Daniel Bonamassa in order to clarify or corroborate Bonamassa's assertions and possibly support his alleged bribery amounts.

It is quite possible that the above agencies strategically avoided obtaining this information and simply relied on the statements and testimony of Bonamassa eventhough there are documents which may prove otherwise.

In any event, Bonamassa testified that the bribes were placed in envelopes which usually contained between $5,000 to $10,000. Bonamassa was very conscious of the banking rules and reporting requirements for withdrawing cash and was very careful in avoiding any red flags. Bonamassa also used check cashing establishments in an effort to avoid any banking notification requirements.

To the contrary, Ralph Longo testified that he and others received between 4 – 5 envelopes; however, they contained larger cash amounts than Bonamassa testified to. Neither witness offered any documents to support or corroborate their testimony, and the defense reasonably believes that the preponderance of evidence standard has not been met.

Ralph Longo also testified that he personally profited between $15,000 to $20,000 from this scheme; however, he is giving himself a $5,000 cushion or margin of error which directly impacts on Mr. Vitale's guideline calculation. Longo testified that the money received from Stadium Painting at Co-op City was divided into four (4) equal shares which excluded Mr. Vitale.

The four (4) participants were; Baez, Pabon, Jordan and Longo who split the payments equally. If Longo received a total of $15,000 then the total bribe payments received were $60,000. If the Court credits the $20,000 figure then the total bribe payments were $80,000 which was split in four (4) equal shares. Longo testified that Mr. Vitale was not one of the participants who shared in the proceeds from the payments; however, Longo testified that he gave half of his money received to Mr. Vitale. Longo was then reprimanded by Peter Jordan at Co-op City for doing so, and said in sum and substance that Vitale was lucky to have a job.

Longo testified that his motivation for being a cooperator was retaliation for being fired from his position at Co-op City approximately five (5) years after the conspiracy was completed. Longo admitted at the hearing that not all of the bribe payments were given to Longo by Nickhoulas Vitale. The U.S. Probation Department also corroborates this information on page 7, paragraph 22 of the defendant's PSR, "**SOME** of these kickback payments were delivered by Vitale for CC-2. Based on the hearing CC-2 has been identified as Bonamassa. The Probation Department continues on page 7, paragraph 24 that, "Vitale was aware of these kickback payments from CC-2 and delivered "**SOME**" of the payments to CC-1 and others.

### Guideline Calculations

Based on the four (4) counts that Mr. Vitale was originally charged with in the indictment and the testimony of the two (2) witnesses; this bribery scheme began in the year 2000 and continued into 2002 when the conspiracy ended according to Bonamassa's testimony.

The Court should utilize the November 1, 2000 edition of the Guidelines Manual which was in effect at the time the offense was committed. The controlling date that is consistent in all four (4) counts of the indictment is August 2000 for ex post facto purposes. This application would be in accordance with U.S.S.G. §1B1.1 (b) (1). The U.S. Probation Department on page 10, paragraph 46 of the defendant's PSR utilized the November 1, 2001, edition of the Guidelines Manual. The defense respectfully submits that the 2001 manual was used in error and violates the ex post facto clause.

The appropriate guideline level for a violation of 18 U.S.C. §666 (1) (2) is §2C1.1, which calls for a base offense level of ten, pursuant to §2C1.1 (a). The §2C1.1 guideline references the Fraud & Deceit table in §2F1.1 which allows for an increase in a number of levels based on the monetary amounts in this case. The amounts testified to in this case by Bonamssa would be between $80,000 - $100,000 and this would result in an additional six (6) levels added to the base offense level of ten (10) under §2F1.1 (b) (1) (G) which is "more than $70,000". Thus the adjusted calculations would be a level 10 plus 6 levels minus 3 levels (acceptance of responsibility) equals a level 13.

If the Court credits Longo with the monetary amount of $15,000 per person which was split in four (4) even ways then the total would be $60,000. This amount would be reflected in §2F1 (b) (1) (F) which is more than $40,000. Thus the adjusted calculations would be level 10 plus 5 levels (more than $40,000) minus 2 levels (acceptance of responsibility) yields the same adjusted level of 13.

### Defendant's Role in the Offense (Mitigating Role)

The defense is respectfully requesting that the Court make a finding that the defendant's guideline calculations should be decreased by three (3) levels pursuant to U.S.S.G. §3B1.2 based upon the testimony elicited at the hearing.

Mr. Vitale by all accounts was a union painter who worked five (5) days per week at Co-op City.  Mr. Vitale mentioned the potential painting contract to Daniel Bonamassa who was the owner of Stadium Painting at Co-op City in order to avoid layoffs for himself, his father and fellow workers.  Mr. Vitale was in self-preservation mode and his primary goal was to avoid work interruption and going on unemployment.

Mr. Vitale became a painter and plasterer for Stadium Painting and he was not in any managerial position at the company, he did not share in the profits, he did not supervise workers, he did not have control over the finances of the company and he did not have any decision-making authority within Stadium Painting.

Mr. Bonamassa after receiving the Co-op City painting contract told Nickhoulas Vitale that he would "Take care of him" without ever clarifying what his intentions were at the time.

As a result of the painting contract won by Stadium Painting at Co-op City, Bonamassa began sending cash payments to Co-op City by way of Nickhoulas Vitale.  Mr. Vitale did not bring every envelope to the persons at Co-op City and Bonamassa stated that he had "No sense of whether he kept the money for himself," meaning Vitale.

According to the testimony Vitale was nothing more than a courier who delivers the payments; however, there was no evidence elicited that he kept or took any money from the envelopes for himself.  Additionally, Mr. Vitale never requested, demanded, or threatened anyone into giving him money in connection with the painting contract.

Furthermore, Mr. Vitale did not have any decision-making authority at Co-op City, he was not a board member, he was not in a managerial or supervisory position at Co-op City and he clearly was not amongst the inner circle of persons who were dividing up the money.  The Co-op City persons which included Baez, Jordan, Pabon and Longo were not inclined to give Mr. Vitale an equal share of the kickback payments; however, Longo gave Vitale half of his money on his own to Vitale and Peter Jordan voiced his objection to Longo regarding the payments to Vitale.

A final argument on this topic involves the meeting at the Vitale household that both cooperators testified about.  Longo testified that Mr. Vitale did not participate in the meeting or the discussions between the parties, and was not even seated at the table while the meeting transpired.

This clearly and unequivocally demonstrates that Mr. Vitale was a minor participant in the kickback payment activity and was less culpable than the other participants in the conspiracy.  Based on the foregoing reasons the defense respectfully requests that a three (3) point intermediate adjustment be adopted by the Court which will decrease the defendant's offense level by three points based on his mitigating role in the offense.

<u>Restitution</u>

  The defense respectfully requests that the Court not impose any restitution amount as a condition of Mr. Vitale's sentence. Based on the testimony of the two (2) witnesses there was no evidence to support a theory that Co-op City suffered any pecuniary harm.

  Bonamassa testified that he did not artificially inflate his prices or his overall bid in order to compensate for the kickback payments. Bonamassa was not the highest bidder for the contract, in fact he was the second lowest bidder when he was awarded the painting contract on a probationary basis.

  Bonamassa further testified that all kickback payments came from within his own profit margin, and the cost was not passed along in any way to the residents of Co-op City. It is important to note that all the work performed at Co-op City was done well without any registered complaints, and Stadium Painting was not involved in any double-billing to the residents of Co-op City.

  The government supports the theory that the Co-op City residents did not suffer any actual calculable loss, and the U.S. Probation Department concurs with this assessment on pages 8 – 10, paragraphs 34 – 42 of the defendant's PSR under the victim impact section.

  Thus the defense respectfully requests that the Court not impose any restitution amount on Mr. Vitale based on the testimony elicited at the hearing and, the government's analysis on page 8 of their April 25, 2008 letter to your Honor. Additionally, the U.S. Probation Department conducted their own independent investigation and analysis and came to the same conclusion.

<u>Offense Level</u>

  The defense respectfully submits that the Court should adopt the following advisory guideline calculations at the time of Mr. Vitale's sentencing if the Court gives credence to the testimony of the two (2) cooperating witnesses.

  The base offense level is a level 10 pursuant to U.S.S.G. §2C1.1. Secondly based on the monetary chart in §2F1.1, more than $70,000 would result in a six (6) point increase in the defendant's base offense level which would then become a level 16. The Court would then decrease the defendant's offense level by three (3) levels for a mitigating role and a further decrease of three (3) levels for acceptance of responsibility. The adjusted offense level would be a level 10, and the defendant has a Category 1 criminal history and therefore the advisory guideline would be a Zone B range of 6 – 12 months' imprisonment, as well as the other sentencing variations available to the Court under the Zone B provisions set forth pursuant to U.S.S.G. §5BG1.1(a) (2).

The Court shall also analyze the factors as they apply to Mr. Vitale under 18 U.S.C. § 3553 (a) prior to sentencing the defendant.  See: United States v. Crosby, 397 F 3d 103 (2d Cir. 2005).

### Statute of Limitations

The defense by way of notice of motion on June 28, 2007 filed with the Court a motion to dismiss the instant indictment based upon the statute of limitations.  The defense moved pursuant to Federal Rule of Criminal Procedure Rule 12, and Title 18 U.S.C.§3282 to dismiss the instant indictment because it was filed beyond the five (5) year statute of limitations.

The government opposed Vitale's motions in the Government's Memorandum of Law in Opposition to Defendant Nickhoulas Vitale's pre-trial motions, pages 8 – 16 filed on July 23, 2007.

Following oral argument on this issue Judge Karas ruled that the statute of limitations issue cannot be resolved in a pre-trial motion to dismiss pursuant to Fed. R. Crim. P.12 (b).

Mr. Vitale now re-news his motion to dismiss the indictment and vacate his plea based on the statute of limitations expiring prior to the filing of the indictment.  The testimony of the two (2) witnesses called by the government on May 8, 2008 in connection with the defendant's sentencing factually supports Mr. Vitale's motion to dismiss based on the statute of limitations.

The testimony from Bonamassa (CC-2) at the hearing elicited certain facts which support the defense's theory that the statute of limitations has expired and the indictment is subject to dismissal.

Mr. Vitale left the employment of Stadium Painting in January 2002 and discontinued his work at Co-op City due to a non-work related injury which prevented him from working.

Daniel Bonamassa sent a letter to the Board at Co-op City and terminated his company's painting contract on January 18, 2002 by way of the corporation's resignation letter.  The above two (2) events can be viewed as important and relevant dates which ended Mr. Vitale's conspiratorial conduct.

Bonamassa further testified that he received two (2) additional checks from Co-op City for work previously performed; the first check was received in March 2002 and the second and final check was received in June 2002.  Bonamassa testified that he made a kickback payment on the March 2002 check, but I do not believe that Bonamassa testified that Vitale delivered this payment.

The OVERT ACTS section of the instant indictment on pages 6 – 7, paragraphs 18(e) states, "On or about April 17, 2002, CC-2 provided to Vitale for delivery a kickback payment in connection with the Co-op City painting work."

There was absolutely no testimony elicited from Bonamassa which supports paragraph (e) of the indictment.  The defendants were indicted on April 11, 2007, and if the final kickback payment was given to the co-conspirators at Co-op City prior to April 11, 2002 then the statute of limitations would have expired.  Also the government would have to demonstrate that Vitale delivered this final payment as well; otherwise, his role in the conspiracy would be deemed to have terminated well prior to this date.

Bonamassa also testified that he received a final check from Co-op City in June 2002 but did not make a kickback payment on this final check.  Thus the conspiracy abruptly ended with the March 2002 transaction, and the April 2002 kickback payment which is the longest possible date that is most favorable to the government provided that Vitale delivered that payment.

## Motion to Dismiss

Mr. Vitale respectfully requests that his plea be vacated and the indictment be dismissed based on the statute of limitations pursuant to Federal Rule of Criminal Procedure 12(b) (2).

The testimony elicited at the Fatico hearing renders the indictment facially insufficient which is an issue the Court can decide prior to sentencing Mr. Vitale. Rule 12 of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pre-trial motion any defense, objection, or request that the Court can determine without a trial of the general issue."  The defense maintains that the Fatico hearing held before your Honor is a sufficient substitute for a trial because of the development of the facts at the Fatico hearing.

The statute of limitations does not begin to run until after the crime has been completed. Toussie v. United States, 397 U.S. 112, 115, (1970). In order to determine the conclusion of a conspiracy the Court can analyze the testimony of the two witnesses to determine when Mr.Vitale withdrew from the conspiracy or when the conspiracy factually came to an end.  These dates will vary in this case depending upon the Court's determination as to when the conspiracy officially and factually ended.

It is important to note that the factual issues raised at the hearing are sufficient for the Court to rule on Mr. Vitale's motion to dismiss based on the statute of limitations. The Government may argue that the statute of limitations issue could have only been resolved at trial, and since the defendant pled guilty the issue became moot. We respectfully disagree. The hearing sufficiently elicited pertinent facts relating to the statute of limitations, and the Court may decide this issue prior to sentencing or order a continuation of the hearing to properly address this issue.

  Mr. Vitale respectfully submits that he withdrew from the conspiracy outside of the statute of limitations period, and these dates were affirmatively identified at the <u>Fatico</u> hearing. Thus, "good cause" exists at this time for the Court to decide this issue in lieu of a trial, or to order a continuation of the <u>Fatico</u> hearing.

  Wherefore, Mr. Vitale respectfully requests that your Honor grant the motion to vacate the plea and dismiss the indictment based on the expiration of the statute of limitations; or in the alternative either order a continuation of the <u>Fatico</u> hearing regarding this issue, or sentence the defendant according to the plea agreement and the factors set forth in 18 U.S.C. §3553(a).

  Thank you very much for your time and consideration.

            Respectfully submitted,


            Vincent J. Romano


cc: AUSA Alexander Willscher